**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KAREN SARPOLIS,** | : | |
| ***Individually and as Administratrix of the*** | : | |
| ESTATE OF ANGELA ANASTACIA | : | |
| MILLER, | : | **CIVIL ACTION** |
| | : | |
| **Plaintiffs,** | : | **NO. 13-5521** |
| **v.** | : | |
| | : | |
| | : | |
| **ALLAN TERESHKO et al,** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

**<u>MEMORANDUM OPINION</u>**

Tucker, C. J.                                                      June 17, 2014

This is a civil RICO action.  Plaintiff Karen Sarpolis initiated this action against nine

defendants [1] for conspiracy to "devalue" and "derail" Plaintiff's settlement in a medical

malpractice action in state court.  Plaintiff's First Amended Complaint asserts four causes of

action for conspiracy in violation of Pennsylvania state law and the Racketeer Influenced and

Corrupt Organization Act ("RICO"), 18 U.S.C. §§ 1962(b)–(d).

Presently before the Court are six motions to dismiss: (1) Defendants Post & Schell, P.C.

and Heather Tereshko's Motion to Dismiss (Doc. 8) (collectively "Post & Schell Defendants");

(2) Defendant CHOP Newborn Care's Motion to Dismiss (Doc. 10); (3) Defendant Trustees of

the University of Pennsylvania's Motion to Dismiss (Doc. 11) ("Penn") [2]; (4) Defendant

---

[1] The following defendants have not filed answers or otherwise responded to Plaintiff's First Amended Complaint:
Live Message America, Inc. and Chestnut Hill Healthcare Medical Associates.

[2] Denoted as "University of Pennsylvania Community Health Network" in the First Amended Complaint.

Pennsylvania Professional Liability Joint Underwriting Association's Motion to Dismiss (Doc. 13) ("JUA"); (5) Defendant Community Health Systems, Inc.'s Motion to Dismiss (Doc. 21) ("CHSI"); and (6) Defendant Allan Tereshko's Motion to Dismiss (Doc. 22) ("Judge Tereshko"). Also under consideration are Plaintiff's consolidated Response in Opposition to the above-referenced motions (Doc. 28), the Post & Schell Defendants' Reply (Doc. 31), Penn's Reply (Doc. 36), CHOP Newborn Care's Reply (Doc. 38), and Plaintiff's consolidated Sur-Replies (Doc. 42).  Upon consideration of the parties' motions with briefs and exhibits, Defendants'[3] motions will be granted for the reasons set forth below.

## I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case arises from an underlying medical malpractice case Plaintiff Karen Sarpolis ("Plaintiff"), *pro se*, filed on her own behalf and on behalf of her deceased daughter, Angela Anastacia Miller, on September 22, 2005 against Chestnut Hill Hospital and various medical service providers in the Philadelphia Court of Common Pleas (hereinafter "State Court Action") (First Am. Compl. ¶¶ 21-23.)  Plaintiff claims that the alleged medical malpractice resulted from Plaintiff's treatment at Chestnut Hill Hospital on February 8, 2005. (Id.) Plaintiff was represented by counsel during the State Court Action.

The Honorable Jacqueline F. Allen was the presiding judge assigned to the State Court Action. (Id. ¶ 44; see also Post & Schell Defs.' Ex. 1 to Colvin Dec. ["State Court Docket"].)[4]

---

[3] Henceforth, the Court's use of the term "Defendants" refers to the moving defendants whose motions are presently before the Court.

[4] "In deciding motions to dismiss pursuant to Rule 12(b)(6), courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." Lum v. Bank of Am., 361 F.3d 217, 222 n. 3 (3d Cir.2004). "Documents that the defendant attaches to the motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim; as such, they may be considered by the court" without converting a 12(b)(6) motion into a motion for summary judgment, provided that neither party disputes the document's authenticity. Pryor v. Nat'l

Between September 22, 2005, the date Plaintiff filed the State Court Action, and May 24, 2007, Post & Schell had no involvement in the State Court Action. (State Court Docket at 18.)  On May 24, 2007, Donald N. Camhi, an attorney at Post & Schell, entered his appearance on behalf of one of the certified nurse-midwife defendants who, until that time, had been represented by a different attorney at a different law firm. (Id.)  Heather Tereshko, Judge Tereshko's wife and then an attorney at Post & Schell, did not enter an appearance in the State Court Action and there is no indication she had any direct involvement in the State Court Action.[5]

On October 1, 2008, Judge Allen issued an order for a trial date certain of January 26, 2009 in the State Court Action. (Id. at 35.)  On December 23, 2008, Chestnut Hill Hospital, which was not represented by Post & Schell, filed an omnibus motion in limine. (Id. at 37.)  The motion was assigned to Judge Allen on December 29, 2008. (Id.)  On January 7, 2009, the motion was reassigned to Judge Tereshko. (Id. at 38.)  On January 9, 2009, Post & Schell filed four motions in limine, and Plaintiff also filed four motions in limine. (Id. at 38-40.)  On January 14, 2009, consistent with the reassignment of the previously filed motion in limine, these other

Collegiate Athletic Ass'n., 288 F.3d 548, 560 (3d Cir. 2002) (internal citation omitted).  The court may also consider "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading." Id.; see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) ("As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings. However, an exception to the general rule is that a document integral to or explicitly relied upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment." (emphasis omitted and alteration in the original) (internal citation omitted).  Accordingly, contrary to what Plaintiff argues, the Court may properly consider the State Court Docket in resolving the instant motions to dismiss for two reasons: (1) the docket is a matter of public record, and (2) the events of the State Court Action are central to Plaintiff's claims in this case.

Additionally, the docket for the State Court Action does not contain entry numbers.  As such, the Court refers only to the date certain entries were made on the docket, rather than specific docket entry numbers.

[5] In her First Amended Complaint, Plaintiff does not allege any conduct or involvement in the alleged conspiracy by Heather Tereshko, apart from the fact that she is married to Judge Tereshko.  A review of the State Court Docket further substantiates that Heather Tereshko had no direct or formal involvement in the State Court Action.

motions in limine were reassigned from Judge Allen to Judge Tereshko (Id. at 43-44.) On January 14, 2009, Judge Tereshko issued an order for the parties to attend a mandatory settlement conference on January 16, 2009 (Id. at 44.)   The parties attended a settlement conference on that date.[6]  On January 23, 2009, Judge Tereshko issued an order which stated the following:

> The Court having been advised that the within case has been settled, the case shall be marked "Discontinued" on the Prothonotary's docket and removed from the applicable list and inventory of pending cases….
> **This case may be restored to the trial list only upon written Order of the Team/Program Leader.   This relief shall be requested by formal motion.**
> It is further Ordered and Decreed that in the following types of cases additional steps must be taken to officially conclude the case: Minor's Compromises, Wrongful Death/Survival Actions (see Pa. R.C.P. 2039, 2064, 2206, Phila. Civ. R. No.2039.1, and Joint General Court Regulation 97_1) and Joinder (see Pa. R. C. P. 2231).

(Id.; see also Post & Schell Defs.' Ex. 2 to Colvin Dec.)  According to the docket, there has been no further action in the State Court Action since January 23, 2009.  Thus, the State Court Action spanned a little over three years.  In that time frame, it would appear that Judge Tereshko's involvement in the case was limited to just sixteen days.

On April 25, 2013, more than four years after the State Court Action was discontinued, Plaintiff filed a "malfeasance complaint" against Judge Tereshko in the Philadelphia Court of Common Pleas. (Post & Schell Defs.' Ex. 3 to Colvin Dec.; Doc. 1.)  Judge Tereshko was the only defendant in this original complaint.  In the original complaint, Plaintiff alleged that Judge Tereshko engaged in improper conduct in the State Court Action by not disclosing to Plaintiff that his wife worked at Post & Schell. (Id. ¶ 5.) Plaintiff further alleged that at the settlement

---

[6] Although there is no entry on the State Court Docket verifying that the settlement conference was held on January 16, 2009, none of the parties involved in the State Court Action and in this action have disputed that the settlement conference was in fact held.

conference in advance of trial, Judge Tereshko "suggested a low settlement amount, but no extra conditions" and "threatened very unfavorable terms at trial to disadvantage Plaintiff and coerce her into considering the proposal." (Id. ¶¶6-7.)   Plaintiff claimed that she was deceived into agreeing to the discontinuance through the misrepresentation that the case could be easily re-docketed if the settlement was not finalized and funded. (Id. ¶8.)

In response to Plaintiff's original complaint, Judge Tereshko filed preliminary objections. Thereafter, on August 6, 2013, Plaintiff filed the present First Amended Complaint, which describes a widespread conspiracy among numerous defendants allegedly designed to "devalue" Plaintiff's claim in the State Court Action.  Specifically, Plaintiff now alleges that, in 2004, well before the events giving rise to her claim for medical malpractice even occurred, the University of Pennsylvania sought to gain control of Chestnut Hill Hospital by entering into a partnership with Community Health Systems, Inc. (First Am. Compl. ¶ 24.) Plaintiff alleges that Penn and CHSI operated Chestnut Hill Hospital in a manner that sought to maximize its profits by allegedly minimizing its expenses and evading claims for medical malpractice. (Id. ¶¶ 18-19.) Plaintiff contends that Penn and CHSI evaded medical malpractice claims by allegedly "tampering with evidence, witnesses and judges in the pending cases." Id. Plaintiff further contends in a general allegation that, in the State Court Action, all "Defendants altered documents and tampered with witnesses associated with Plaintiff's case, and arranged for a Judge related to defendants to take over the case, to devalue it." (Id. at ¶ 20.)

Additionally, Plaintiff now claims that "*[b]efore* [Judge] Tereshko…had any jurisdiction over the subject matter or person of the Plaintiff and without performing any judicial acts, he conspired with Post [&] Schell, JUA, and his wife Heather Tereshko to have the case transferred

to his jurisdiction with the intent to obstruct justice and to assist in carrying out the [d]efenses' objectives for disposition of the case." (Id. ¶ 45) (emphasis in original).  Plaintiff again asserts that Judge Tereshko did not inform her that his wife worked for Post & Schell, and that his failure to do so represents an impermissible conflict of interest. (Id. ¶¶46-48.)  Plaintiff claims that, "much later," when she learned of Judge Tereshko's conflict of interest, she "requested that he recuse himself or that he be removed from the case." (Id. ¶ 54.) Plaintiff avers Judge Tereshko "did not recuse himself," and "did not acknowledge the conflict of interest." (Id. ¶¶55-57.) However, there are no entries on the State Court Docket or exhibits attached to Plaintiff's pleading or briefs which substantiate that such a request was made.  On September 20, 2013, the Post & Schell Defendants removed Plaintiff's First Amended Complaint to this Court, and the other represented defendants consented.  Plaintiff asserts the following claims:

> **Count I:** Claim against all Defendants for "Pennsylvania Civil Conspiracy"
>
> **Count II**: Claim against Defendants Community Health Systems, Chestnut Hill Healthcare Medical Associates, and Penn under 18 U.S.C. § 1962(c)
>
> **Count III:** Claim against Defendants Community Health Systems and Penn under 18 U.S.C. § 1962(b)
>
> **Count IV:** Claim against all Defendants under 18 U.S.C. § 1962(d) for conspiracy to violate §§ 1962(b) and (c).

## II.      STANDARD OF REVIEW

A court may dismiss a plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6) only when it does not state a claim for relief that is "plausible on its face."  Santiago v. Warminster Twp., 629 F.3d 121, 128 (3d Cir. 2010) (quoting Sheridan v. NGK Metals Corp., 609 F.3d 239, 262 n.27 (3d Cir. 2010)).  All well-pled factual allegations contained in a

plaintiff's complaint must be accepted as true and must be interpreted in the light most favorable to plaintiff.  Argueta v. U.S. Immigration & Customs Enforcement, 643 F.3d 60, 74 (3d Cir. 2011).  A complaint is plausible on its face when its factual allegations allow a court to draw a reasonable inference that a defendant is liable for the harm alleged.  Santiago, 629 F.3d at 128.

To determine the sufficiency of a complaint, courts of the Third Circuit are required to perform a three-step analysis.  Id. at 130.  First, a court must identify the plaintiff's claims and determine the required elements of those claims.  Id.  Next, a court must identify, and strike, conclusory allegations contained in the plaintiff's complaint.  Id.  Conclusory allegations are those that are no more than "'an unadorned, the-defendant-unlawfully-harmed-me accusation,' 'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action,' or 'naked assertion[s].'"  Argueta, 643 F.3d at 72 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 677, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)).  Finally, a court must determine if the remaining factual allegations "plausibly give rise to an entitlement for relief."  Id. at 73 (citing Santiago, 629 F.3d at 130.)

The focus of a court's inquiry into the sufficiency of a plaintiff's complaint is always plausibility of relief.  Bistrian v. Levi, 696 F.3d 352, 365 (3d Cir. 2012).  Plausibility does not require a plaintiff's complaint to demonstrate entitlement to relief is likely or probable.  Argueta, 643 F.3d at 72.  A plaintiff's complaint must only plead facts sufficient "to raise a reasonable expectation that discovery will reveal evidence of the necessary element."  McTernan v. City of York, PA, 564 F.3d 636, 646 (3d Cir. 2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007)).  "A complaint may not be dismissed merely because it appears unlikely that

the plaintiff can prove those facts or will ultimately prevail on the merits." McTernan, 564 F.3d at 646 (citing Twombly 550 U.S. at 555-556).

### III.    DISCUSSION[7]

The instant case appears to be an amalgamation of two issues: one old and one new. First, Plaintiff appears to be attempting to revive her long dormant medical malpractice case by claiming that the settlement purportedly reached in that matter never went into effect.  Second, and relatedly, Plaintiff appears to argue the settlement never went into effect because the Defendants in this case — some of whom were not even party to the underlying State Court Action — were part of some civil conspiracy, the object of which was undermining and "devaluing" medical malpractice cases like Plaintiff's in order to effectuate Penn and CHSI's acquisition of Chestnut Hill Hospital.

With respect to the first issue, this Court is not the proper forum for Plaintiff to attempt to enforce a settlement agreement that was presided over in another court.  With respect to the second issue, as will be discussed, there are numerous legal deficiencies in Plaintiff's civil conspiracy and RICO claims which warrant granting Defendants' motions to dismiss.  In general, however, the Court finds that the instant case is little more than an attempt by Plaintiff to improperly relitigate her medical malpractice case by reframing it as a conspiracy case under both state and federal law.

---

[7] In her Response in Opposition and Reply briefs, Plaintiff frequently raises arguments and claims that are not in her First Amended Complaint.  This is improper.  However, the Court will consider the new allegations raised in Plaintiff's briefs for two reasons: (1) the liberal construction afforded to *pro se* complaints, see Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir.2003), and (2) the Court assumes that, if Plaintiff were granted leave to file a second amended complaint, the allegations Plaintiff raises in her briefs would be an accurate reflection of the amendments she would make.  Accordingly, the remainder of this Opinion will consider the allegations raised in Plaintiff's Response and Reply as if they had been properly pleaded.

**A.**      **"Pennsylvania Civil Conspiracy" (Count I)**

In Count I of the First Amended Complaint, Plaintiff brings a claim for "Pennsylvania Civil Conspiracy" against all of the Defendants.  Plaintiff alleges the Defendants "engaged in an agreement to commit multiple frauds and other unlawful acts for the purpose of devaluing" Plaintiff's medical malpractice case. (First Am. Compl. ¶ 64.)  Plaintiff contends the Defendants "devalued the case by fraud, fraudulent concealment, tampering with evidence, suborning or committing perjury, and bribing judges." (Id. ¶ 66.)  Further, the Defendants "conspired to and did have Plaintiff's case reassigned to [Judge] Allen [sic] Tereshko…for the purpose of devaluing Plaintiff['s] medical malpractice case." (Id. ¶ 67.)   Plaintiff further contends Defendants acted with malice because "all parties reaped financial or career benefits, at Plaintiff's expense." (Id. ¶ 69.)

In Pennsylvania, in order to state a cause of action for civil conspiracy, a plaintiff is required to allege: "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." McKeeman v. Corestates Bank, N.A., 2000 PA Super 117, 751 A.2d 655, 660 (Pa. Super. Ct. 2000) (citing McGuire v. Shubert, 722 A.2d 1087, 1092 (Pa.Super.1998)). Further, "absent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act." Id. (citing Pelagatti v. Cohen, 370 Pa.Super. 422, 536 A.2d 1337, 1342 (1987)). Accordingly, an allegation of civil conspiracy requires that a plaintiff allege a cause of action for some underlying tortious conduct in order for the plaintiff's civil conspiracy claim to proceed.

9

In the instant matter, Defendants argue that Plaintiff's civil conspiracy claim must be dismissed because Plaintiff has failed to allege any independent tort underlying her civil conspiracy claim, and an allegation of civil conspiracy must be coupled with a substantive theory of liability in order to sustain a cause of action under Pennsylvania law.  The Court, however, finds that Plaintiff's civil conspiracy claim must be dismissed not because Plaintiff fails to allege an underlying tort, but rather because the underlying torts Plaintiff *does* allege are all legally deficient.   As previously stated, Plaintiff claims the Defendants "devalued the [medical malpractice] case by fraud, fraudulent concealment, tampering with evidence, suborning or committing perjury, and bribing judges." (Id. ¶ 66.)   Pennsylvania law, however, does not recognize a private cause of action for perjury or obstruction of justice. Amos v. NMS Labs, No. 1:12-CV-2145, 2013 WL 504181, at *1 (M.D. Pa. Feb. 12, 2013) ("[T]here is no private cause of action for perjury under Pennsylvania law."); Bennett v. Maier, CIV.A. 97-3555, 1998 WL 386129, at *4 (E.D. Pa. July 7, 1998) ("No civil cause of action for "obstruction of justice" exists under either federal law or the law of the state of Pennsylvania."); Pelagatti v. Cohen, 370 Pa. Super. 422, 432, 536 A.2d 1337, 1342 (1987) ("[T]here is no civil cause of action for 'obstruction of justice' per se.").

Accordingly, the First Amended Complaint is left only with Plaintiff's allegations of fraud and fraudulent concealment.  As it is, fraudulent concealment is not exactly an independent tort.  Rather, it is an equitable doctrine that "operates to stop the statute of limitations from running in circumstances when the accrual date of a claim has passed but the 'plaintiff's cause of action has been obscured by the defendant's conduct.'" In re Processed Egg Products Antitrust Litig., MDL 2002, 2011 WL 5980001, at *3 (E.D. Pa. Nov. 30, 2011) (quoting In re Linerboard

10

Antitrust Litig., 305 F.3d 145, 160 (3d Cir.2002)).   Additionally, Plaintiff's Response in Opposition to Defendants' motions to dismiss adds the entirely new allegation of fraud in the inducement.   Under the liberal pleading standard afforded to *pro se* litigants, the Court will construe the First Amended Complaint as also alleging the underlying tort of fraud in the inducement.

1.   <u>Plaintiff's Underlying Claim of Fraud is Barred by the Statute of Limitations</u>

"Fraud consists of anything calculated to deceive, whether by single act or combination." <u>Am. Indep. Ins. Co. v. Lederman</u>, No. 97-4153, 2000 WL 1209371, at *14 (E.D.Pa. Aug.25, 2000) (internal quotation omitted). In order to sustain a claim for fraud, a plaintiff must show: (1) misrepresentation; (2) a fraudulent utterance; (3) intention by the maker of the statement that the recipient will thereby be induced to act; (4) justifiable reliance upon the misrepresentation; and (5) damage to the recipient as the proximate result of the misrepresentation. <u>Id.</u>

In the present case, even assuming the First Amended Complaint states a claim for the underlying tort of fraud, Plaintiff's fraud claim is barred by the statute of limitations.   Under Pennsylvania law, a claim for fraud is subject to a two-year statute of limitations. 42 Pa. Cons. Stat. Ann. § 5524(7); <u>see</u> <u>also</u> <u>Reynolds v. Fed. Bureau of Prisons</u>, No. 09-3096, 2010 WL 744127, at *8 (E.D. Pa. Mar. 2, 2010) ("Under Pennsylvania law, the statute of limitations for civil conspiracy is the same as the statute of limitations for the underlying tort.") (internal citations omitted).   "[T]he limitations period for conspiracy does not begin to run until after the commission of the last act of the conspiracy." <u>Schuylkill Skyport Inn, Inc. v. Rich</u>, CIV. A. 95-3128, 1996 WL 502280 (E.D. Pa. Aug. 21, 1996) (citing <u>Baker v. Rangos</u>, 324 A.2d 498, 510 (Pa.Super.1974)); <u>see</u> <u>also</u> <u>Com. v. Fabrizio</u>, 197 Pa. Super. 45, 56, 176 A.2d 142, 147-48 (1961)

11

("[W]here there are continuous and repetitious acts or trespasses as a part of a continuous conspiracy, it has been held that the statute of limitations does not begin to run until after the commission of the last act of the conspiracy.")  Here, based on the allegations of the First Amended Complaint, the last act in the alleged conspiracy occurred when Judge Tereshko issued the January 23, 2009 Order removing the State Court Action from the list of active cases after the court was informed that the parties had reached a settlement.  Thus, Plaintiff would have had until approximately January 23, 2011 to file her claim for civil conspiracy.  This case was not filed until April 25, 2013 — more than two years too late.

> 2.  <u>Plaintiff Is Not Entitled to Invoke the Equitable Remedy of Fraudulent Concealment</u>

In apparent recognition of the fact that her claim for fraud is time-barred, Plaintiff's Response in Opposition mostly abandons the fraud claim and instead contends the First Amended Complaint adequately alleges fraudulent concealment and fraud in the inducement, or that such causes of action can be inferred. (Pl.'s Resp. Opp'n 26-28.)  As previously stated the doctrine of fraudulent concealment, if properly pleaded, would serve to toll the statute of limitations.  To state a claim for fraudulent concealment, a plaintiff must allege particularized facts sufficient to suggest: "(1) that the defendant actively misled the plaintiff; (2) which prevented the plaintiff from recognizing the validity of her claim within the limitations period; and (3) where the plaintiff's ignorance is not attributable to her lack of reasonable due diligence in attempting to uncover the relevant facts." <u>Cetel v. Kirwan Financial Group, Inc.</u>, 460 F.3d 494, 509 (3d Cir.2006) (citing <u>Mathews v. Kidder, Peabody & Co.</u>, 260 F.3d 239, 256 (3d Cir.2001)).  "Courts assess allegations of fraudulent concealment under the heightened pleading standards of Rule 9(b)," <u>see</u> <u>White v. PNC Fin. Servs. Grp., Inc.</u>, CIV.A. 11-7928, 2013 WL

3090823, at *2 (E.D. Pa. June 20, 2013) (citing <u>Byrnes v. DeBolt Transfer, Inc.</u>, 741 F.2d 620, 626 (3d Cir.1984)), which requires a plaintiff to "state with particularity the circumstances constituting fraud." Fed.R.Civ.P. 9(b).   A plaintiff must describe "the circumstances of the alleged fraud with precise allegations of date, time, or place" or otherwise use "some means of injecting precision and some measure of substantiation into their allegations of fraud," as to each defendant against whom tolling is sought. <u>Bd. of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc.</u>, 296 F.3d 164, 172 n. 10 (3d Cir.2002) (citation and internal quotation marks omitted); <u>see also</u> <u>In re Elec. Carbon Products Antitrust Litig.</u>, 333 F.Supp.2d 303, 315 (D.N.J.2004) (explaining that equitable tolling through fraudulent concealment requires "an affirmative act of concealment by *each* defendant") (emphasis added).

The Court is mindful that despite Rule 9(b)'s particularity requirement, "because the question whether a particular party is eligible for equitable tolling generally requires consideration of evidence beyond the pleadings, such tolling is not generally amenable to resolution on a Rule 12(b)(6) motion." <u>In re Cmty. Bank of N. Virginia</u>, 622 F.3d 275, 301–02 (3d Cir.2010).   Nevertheless, the Court finds that nothing in the First Amended Complaint, Plaintiff's Response in Opposition, or Plaintiff's Reply suggests that she is entitled to this equitable remedy.   First, the First Amended Complaint does little more than assert, in conclusory fashion, that unspecified defendants "engaged in an agreement to commit multiple frauds and other unlawful acts for the purpose of devaluing" Plaintiff's medical malpractice case, in part by having the case transferred to Judge Tereshko. (First Am. Compl. ¶¶ 64-66.)   The Complaint is devoid of specific facts regarding the date, time, or place of Defendants' allegedly fraudulent conduct.   Plaintiff's Response in Opposition fairs no better, and instead only repeats Plaintiff's

13

previous assertion that Judge Tereshko had a duty to disclose that his wife worked for Post & Schell, but he did not do so. (Pl.'s Resp. Opp'n 27.)  Plaintiff also invites the Court to infer that the Defendants fraudulently concealed information from her. (Id.)  Setting aside the fact that the value of Plaintiff's medical malpractice case is speculative, Plaintiff fails to account for what affect the fact that Judge Tereshko's wife worked for the firm that represented one of the defendants would have had on Plaintiff's willingness to accept the settlement.  The Court further notes that Plaintiff, although *pro se* in the instant matter, was represented by counsel in the State Court Action.  Presumably after consultation with her attorney, Plaintiff made the decision to accept the settlement terms offered by the defendants in the State Court Action.  The Court declines Plaintiff's invitation to broadly infer that had Plaintiff known of Judge Tereshko's potential conflict of interest, Plaintiff would have been unwilling to settle with the defendants and that the settlement terms would somehow have been more favorable to Plaintiff than they allegedly were.

Additionally, the Court finds extremely problematic Plaintiff's lack of diligence in bringing the instant case, as evidenced by a series of letters Plaintiff has attached to her Response in Opposition. The first letter is dated January 5, 2011 and was sent by Plaintiff to The Honorable William J. Manfredi, a supervising judge of the Philadelphia Court of Common Pleas. (Pl.'s Resp. Opp'n, Ex. G.)  In this letter, Plaintiff informed Judge Manfredi that "[t]he case and its settlement negotiations were presided over by Judge Allan Tereshko, almost two years ago" and that [t]he case was taken off the trial list shortly after." (Id.)  Plaintiff further informed Judge Manfredi:

> Additional term [sic] and conditions, including the release of parties not named
> in the suit and for issues not part of the suit, were made conditions for

14

> settlement, after the fact.  I have come to learn that Judge Tereshko's wife's law firm, colleagues, and her clients are among the additional parties.  The defense attorney making these additional demands is her law partner.  My case is still unresolved.
>
> I am requesting you help, as Judge Tereshko has a conflict of interest.

(Id.)  In a letter dated January 7, 2011, Judge Manfredi informed Plaintiff that her letter had been received, and that Judge Manfredi was forwarding Plaintiff's letter to Judge Tereshko and Plaintiff's attorney of record, Dennis Abrams. (Pl.'s Resp. Opp'n, Ex. H.)  In a letter dated January 10, 2011,[8] Judge Tereshko informed Plaintiff that he was in receipt of both her letter to Judge Manfredi and Judge Manfredi's January 7, 2011 letter to Plaintiff. (Pl.'s Resp. Opp'n, Ex. I.)  The full content of Judge Tereshko's letter is as follows:

> I am unaware of any open issues in this matter of which you seem to reference in your letter.  Since you did not copy the other attorneys who were involved at the time of settlement, I am forwarding to them copies of your letter along with Judge Manfredi's letter as a matter of due process.
>
> As the Judge presiding over the settlement and disposition of this case, I continue to have jurisdiction over that aspect of the case.
>
> Please advise as to what issues are open because based upon our official docket, the matter is closed.

(Id.)  Accordingly, Plaintiff's own evidence makes one thing abundantly clear: even if one assumes that each of the Defendants actively misled Plaintiff in one way or another, the fact remains that by January 5, 2011 *at the latest*, Plaintiff knew of the Defendants' fraudulent concealment.[9]  However, Plaintiff's First Amended Complaint and Response in Opposition fail

---

[8] The letter is actually dated January 10, 2010; however, the letter refers to both Plaintiff's January 5, 2011 letter and Judge Manfredi's January 7, 2011 letter. The Court therefore presumes the January 10, 2010 date is merely a typo.

[9] Further, Judge Tershko's January 10, 2011 letter is also arguably the last act in the alleged conspiracy, in which case Plaintiff would have had until approximately January 10, 2013 to bring her claim for fraud.  Under this analysis, Plaintiff's fraud claim would again be time-barred.

to account for  why Plaintiff did not follow up with her attorney as to why, as of January 5, 2011,

the settlement had not yet been completed; whether she brought her concerns regarding Judge

Tereshko's alleged conflict of interest to her attorney's attention; whether she followed up on

Judge Tereshko's invitation to inform him as to  "what issues are open" in her case; whether —

to the extent she was unwilling to bring her concerns directly to Judge Tereshko — she made any

attempt to follow up with Judge Manfredi; and what effort she has made to have the State Court

Action returned to the active case docket.  "[F]raudulent concealment doctrine does not toll the

statute of limitations where the plaintiff knew or should have known of h[er] claim despite the

defendant's misrepresentation or omission." Mest v. Cabot Corp., 449 F.3d 502, 516 (3d Cir.

2006).  Thus, Plaintiff cannot invoke the doctrine of fraudulent concealment where her own

evidence demonstrates she did not diligently pursue her claim once the Defendants' alleged

concealment became known to her.  See In re Processed Egg Products Antitrust Litig., 2011 WL

5980001, at *13 ("[A] plaintiff who fails to allege any due diligence is virtually foreclosed from

invoking the fraudulent concealment doctrine.); see also Davis v. Grusemeyer, 996 F.2d 617, 624

n. 13 (3d Cir. 1993).  Additionally, the Court declines to toll the statute of limitations because

Plaintiff has failed to identify any acts of concealment which are independent from the

underlying conspiracy. Meehan v. Archdiocese of Philadelphia, 2005 PA Super 91, 870 A.2d

912, 921 (Pa. Super. Ct. 2005) ("[I]n order for fraudulent concealment to toll the statute of

limitations, the defendant must have committed some affirmative independent act of

concealment upon which the plaintiffs justifiably relied.") (citing Kingston Coal Co. v. Felton

Min. Co., Inc., 456 Pa. Super. 270, 290, 690 A.2d 284, 290 (1997); see also T.R. Whitelyn

Holstein Breeder Associates v. Whitelyn Farms, Inc., CIV.A. 86-6738, 1988 WL 136464 (E.D. Pa. Dec. 16, 1988) ("the tolling doctrine requires that the fraudulent concealment consists of affirmative acts independent of the underlying conspiracy.) (internal citations omitted).

> 3. This Court is Not the Proper Forum for Plaintiff to Assert a Claim for Fraud in the Inducement

Plaintiff makes the following allegations with respect to fraud in the inducement: Post & Schell induced Plaintiff into removing the State Court Action from the docket "upon the false representation that Defendant Pennsylvania JUA would remit the sum agreed to on behalf of the individual health providers of the malpractice action"; Judge Tereshko induced her into removing the State Court Action from the docket "upon the false representation that the case would be quickly redocketed if the settlement was not funded"; and "Defendants at all times know [sic] that [these] representations were untrue," but nonetheless made these "promises" because they knew this was the only way Plaintiff could be induced into removing the case from the docket." (Pl.'s Resp. Opp'n 26-27.)   Essentially, it is Plaintiff's claim that she was fraudulently induced to settle the State Court Action by the representations of the defendants in that action — most of whom are not the same Defendants here.

"Courts consider settlement agreements to be binding contracts," and "ordinary principles of contract law govern settlement agreements." Curiale v. Lenox Group, Inc., 2008 WL 4899474, at *5 (E.D.Pa. Nov.14, 2008); Eigen v. Textron Lycoming Reciprocating Engine Div., 2005 PA Super 141, 874 A.2d 1179, 1184 (Pa. Super. Ct. 2005) (internal citations omitted).   A settlement will not be set aside absent a clear showing of fraud. See McDonnell v. Ford Motor Co., 434 Pa.Super. 439, 643 A.2d 1102, 1106 (Pa.Super.1994).

Setting aside the question of the legal sufficiency of Plaintiff's allegations,[10] it is clear that only the Philadelphia Court of Common Pleas is capable of granting Plaintiff a remedy for fraud in the inducement.  Thus, if Plaintiff has a valid claim for fraud in the inducement, this Court is not the proper forum for Plaintiff to bring such a claim.  Plaintiff's reframing of her fraud in the inducement claim as a civil conspiracy claim to commit fraud in the inducement does not negate this fact.

### 4.  Absence of Malice

Additionally, a cause of action for civil conspiracy requires a plaintiff to allege that the defendant had an unjustified intent to injure, or acted with malice. Guy Chem. Co., Inc. v. Romaco S.p.A., No. 06-96, 2009 WL 840386, at * 16 (W.D.Pa. Mar. 27, 2009) (citing Thompson Coal Co. v. Pike Coal Co., 488 Pa. 198, 412 A.2d 466, 472 (Pa.1979)); see also Becker v. Chicago Title Ins. Co., CIV.A. No. 03-2292, 2004 WL 228672, at *13 (E.D. Pa. Feb. 4, 2004) (Under Pennsylvania law, "[a]n essential element of proof for a conspiracy is malice or intent to injure.") (citing Strickland v. Univ. of Scranton, 700 A.2d 979, 987 (Pa.Super.Ct.1997)).  Malice "will only be found when the *sole* purpose of the conspiracy is to cause harm to the party who has been injured." Becker, 2004 WL 228672, at *13 (citing Thompson Coal Co., 488 Pa. 198, 412 A.2d 466, 472) (emphasis added). Further, "where the facts show that a person acted to advance his own business interests, and not solely to injure the party injured, those facts negate any alleged intent to injure." Id.; see also WM High Yield Fund

---

[10] The elements of fraud in the inducement are as follows: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." Eigen v. Textron Lycoming Reciprocating Engine Div., 2005 PA Super 141, 874 A.2d 1179, 1185 (Pa. Super. Ct. 2005)

v. O'Hanlon, No. 04-3423, 2005 WL 1017811, at *14 (E.D.Pa. April 29, 2005) (noting that a civil conspiracy claim fails when the plaintiffs acknowledged that the defendants' intent was to raise new capital to fund the growth of a nonparty corporation, thereby negating malice solely to injure plaintiffs).

Here, Plaintiff acknowledges that civil conspiracy requires a demonstration of malice or intent to injure, and invites the Court to infer malice. (First Am. Compl. ¶ 69; Pl.'s Resp. Opp'n 26.) The Court will not make such an inference, especially considering that the First Amended Complaint explicitly avers that "all parties reaped financial or career benefits, at Plaintiff's expense" as a result of the alleged conspiracy. (First Am. Compl.¶ 69.) Accordingly, by Plaintiff's own admission the intent of the conspiracy was not to harm Plaintiff, but for the Defendants to advance their respective personal and business interests. Because Plaintiff has not alleged, and cannot allege, that the Defendants "solely" intended to harm her when they engaged in the alleged civil conspiracy, the First Amended Complaint again fails to state a claim upon which relief can be granted.

Defendants' motions to dismiss are therefore granted with respect to Plaintiff's civil conspiracy claim pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 9(b).

## B. RICO (Counts II, III, IV)

### 1. Standing under § 1964(c)

Before the Court considers the sufficiency of Plaintiff's RICO claims under 18 U.S.C. § 1962, the Court first addresses the threshold question of the adequacy of her pleadings as it relates to RICO standing under §1964(c).[11] See Brokerage Concepts, Inc. v. U.S. Healthcare,

---

[11] In its entirety, §1964(c) provides:

Inc., 140 F.3d 494, 520–21 (3d Cir.1998) (stating that § 1964(c) sets forth the "standing requirement" applicable to suits brought under RICO).  To bring a civil RICO claim, a plaintiff must satisfy two statutory elements to confer standing: (1) that she suffered an injury to her "business or property"; and (2) that her injury was proximately caused by the defendants' violation of § 1962. 18 U.S.C. § 1964; see also Maio v. Aetna, Inc., 221 F.3d 472, 482-83 (3d Cir. 2000).  The Court finds that Plaintiff is unable to satisfy either element.

       a.   Injury to Business or Property

Injury to business or property requires "a concrete financial loss and not mere injury to a valuable intangible property interest." Maio, 221 F.3d at 483 (internal quotation omitted); see also Interfaith Cmty. Org. v. Honeywell Int'l, 399 F.3d 248, 254 (3d Cir. 2005) (in order to have standing, a plaintiff must first demonstrate with particularity that she has suffered a concrete injury-in-fact); Anjelino v. New York Times Co., 200 F.3d 73, 88 (3d Cir. 1999) (To determine injury-in-fact, a court will "consider[ ] whether the alleged injury falls within the 'zone of interests' that the statute or constitutional provision at issue was designed to protect[.]").  The injury alleged must "be an ascertainable out-of-pocket loss." FL Receivables Trust v. Bagga, Civ. A. No. 03-5108,2005 WL 563535, at *3 (E.D. Pa. March 8, 2005) (citing Maio, 221 F.3d at 483-84); see also Walter v. Palisades Collection, LLC, 480 F. Supp. 2d 797, 804 (E.D. Pa. 2007) (injury to business or property requirement may be satisfied by allegations and proof of actual

---

(c) Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee, except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962. The exception contained in the preceding sentence does not apply to an action against any person that is criminally convicted in connection with the fraud, in which case the statute of limitations shall start to run on the date on which the conviction becomes final.

18 U.S.C. § 1964(c).

monetary loss, i.e., an out-of-pocket loss). Equally important, "an injury that is speculative or contingent on future events does not confer RICO standing." FL Receivables Trust, 2005 WL 563535, at *4 (citing Maio. 221 F.3d at 495).

Here, Plaintiff alleges two injuries: (1) Plaintiff alleges injury to her property because her "settlement was devalued and derailed," and (2) Plaintiff alleges injury to her business because of "damage to Plaintiff's professional reputation as a result of the falsehood put in the medical malpractice case." (First. Am. Compl. ¶83.)   As to the "devalued and derailed" settlement, Plaintiff argues the Court "should view the settlement as Plaintiff['s] property — an asset of Plaintiff, regardless if it is still illegally held by" Defendant JUA. (Pl.'s Resp. Opp'n 41.) Plaintiff further contends that JUA "has set aside the specific amount dictated in the settlement in its reserves and earmarked it" for Plaintiff. (Id.)

The Court will assume for the sake of argument that Plaintiff is capable to proving the settlement amount.[12]   To the extent Plaintiff seeks to enforce the allegedly unpaid settlement from the State Court Action, the non-payment of settlement would represent a concrete financial loss for Plaintiff. [13]   However, as has been stated, this Court is not the proper forum for enforcing a settlement agreement reached in another court.   To the extent Plaintiff seeks to rescind the settlement because the settlement was "devalued" and reached through fraudulent actions by

---

[12] Neither Plaintiff nor any of the Defendants involved in the settlement of the State Court Action has disclosed what the terms of the settlement were.  However, the Court assumes that if she were permitted to further amend the First Amended Complaint, Plaintiff could allege sufficient facts as to what her financial loss has been.

[13] However, even this argument is complicated by the fact that it is not clear to the Court that a final settlement was ever reached in the State Court Action. At some points in her First Amended Complaint, Plaintiff has denied that any final settlement of her medical malpractice claim was reached or effectuated in the State Court Action. (See e.g., First Am. Compl. ¶ 62g.)   At these times, it appears that the settlement agreement was not executed because after the parties had reached a settlement in principle, Post & Schell's attorney, Donald Cahmi, allegedly proposed additional terms that Plaintiff would not agree to. (Id.)  At other times, Plaintiff seems to suggest that a financial settlement was executed but never paid out.

some or all of the Defendants, this is not a sufficiently concrete financial loss for purposes of standing under RICO. It is not clear from Judge Tereshko's January 23, 2009 Order that the value of Plaintiff's medical malpractice claim, if any, was ever determined in the State Court Action.  As such, this Court is not in a position to know what, if any, the value of Plaintiff's medical malpractice claim was.  In the present matter, it is essentially Plaintiff's contention that but for the actions of the Defendants — with the Post & Schell Defendants and Judge Tereshko serving as the primary bad actors (see First Am. Compl. ¶62g) — then Plaintiff would have been offered (and presumably accepted) a higher settlement amount than the amount that was actually offered by the defendants in the State Court Action.  This contention can only be speculation, and speculative injuries do not confer standing under RICO. Johnson v. Heimbach, CIV.A. 03-2483, 2003 WL 22838476, at *4 (E.D. Pa. Nov. 25, 2003) aff'd, 112 F. App'x 866 (3d Cir. 2004) ("[A] complaint does not adequately plead a RICO violation unless it shows damage to business or property with some certainty; if the claimed injury is speculative, it is not ripe for adjudication.")  "[P]arties are not obligated to make any settlement offers, let alone attractive ones." Walson v. Nationwide Mut. Ins. Co. of N. Am., Civ. A. No. 11-1762, 2012 WL 2159297, at *10 (E.D. Pa. June 14, 2012).  As such, Plaintiff cannot claim "injury" simply based on what she believes the value of her medical malpractice case to have been.

Moreover, the text of Judge Tereshko's January 23, 2009 Order suggests that, if for some reason the State Court Action did not settle, the case could be reopened upon formal motion to Judge Tereshko and a subsequent order granting that motion.  Nowhere in Plaintiff's First Amended Complaint, Response in Opposition, or Reply does she allege what efforts she made to have the State Court Action reopened, such as through formal motion to that court.  Additionally,

as previously stated, Plaintiff has in no way alleged what attempts she made to respond to or otherwise follow up on Judge Tereshko's January 10, 2011 letter inquiring as to what issues remained open in the State Court Action. Thus, it does not appear to this Court that the State Court Action has actually concluded or been adjudicated on the merits.

As to Plaintiff's allegation that she suffered an injury to her business because of alleged damage to her professional reputation, this is also not a sufficiently concrete injury for RICO purposes.  It is well-established that injuries to goodwill and reputation are not only speculative, but are simply not the types of injuries compensable under RICO. Knit With v. Knitting Fever, Inc., CIV.A. 08-4221, 2012 WL 2938992 (E.D. Pa. July 19, 2012) (citing Advanced Oral Techs., LLC v. Nutres Research, Inc., No. Civ.A.10–5303, 2011 WL 198029, at *7 (D.N.J. Jan.20, 2011)); see also Maio, 221 F.3d at 483 (holding that allegations of damage to such "intangible property interest[s]" are insufficient as a matter of law); Hamm v. Rhone–Poulenc Rorer Pharms., Inc., 187 F.3d 941, 954 (8th Cir.1999) ("Damage to reputation is generally considered personal injury and thus is not an injury to 'business or property' within the meaning of 18 U.S.C. § 1964(c)."); Parker v. Learn Skills Corp., 530 F.Supp.2d 661, 678 (D.Del.2008) ("Claimed losses to 'goodwill' and 'business reputation,' in addition to being highly speculative, are not the type of to "goodwill and reputation are not only speculative, but are simply not the types of injuries compensable under RICO.")  As such, Plaintiff cannot claim "injury" based on alleged damage to her reputation and business as a result of the medical malpractice case.

Because Plaintiff has alleged nothing other than speculative injuries, she has failed to allege a congnizable injury under §1964(c).

b.   Proximate Causation

As previously stated, §1964(c) also requires that a plaintiff prove her injury was proximately caused by the defendant's violation of § 1962. 18 U.S.C. § 1964; see also Maio, 221 F.3d at 482-83 (3d Cir. 2000).  As discussed more fully below, see section III.B.2, infra, Plaintiff has not sufficiently alleged violation of any subsection of §1962.  In the absence of a violation of §1962, the second element of the § 1964(c) standing requirement is not met.

2.   Violation of § 1962

a.   Section 1962(c) (Count II)

Section 1962(c) states, in pertinent part, "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity…."  18 U.S.C. § 1962(c).  To state a claim under § 1962(c), a plaintiff must allege defendants: (1) conducted; (2) an enterprise; (3) through a pattern; (4) of racketeering activity; (5) resulting in damage to plaintiff's business or property.  Tapp v. Proto, 718 F. Supp. 2d 598, 625 (E.D. Pa. 2010) aff'd, 404 F. App'x 563 (3d Cir. 2010) (citing Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985)); see also Ins. Brokerage Antitrust Litig., 618 F.3d at 362 (quoting Lum v. Bank of Am., 361 F.3d 217, 223 (3d Cir.2004)).

There are numerous legal deficiencies with Plaintiff's ability to satisfy all of these elements.  In particular, the Court finds Plaintiff fails to allege a pattern of racketeering activity, and will therefore limit its discussion to these two elements.  Assuming arguendo that Plaintiff can satisfy the conduct, enterprise, and injury elements, the fact remains that mere association

24

with an enterprise does not violate §1962(c). Ins. Brokerage Antitrust Litig., 618 F.3d at 370. A person engages in a pattern of racketeering activity by engaging in "at least two acts of racketeering activity" within a span of ten years. 18 U.S.C. § 1961(5). Racketeering activity forms a pattern where the racketeering activities are "related, and that they amount to or pose a threat of continued…activity." H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 239, 109 S. Ct. 2893, 2900, 106 L. Ed. 2d 195 (1989); see also United States v. Bergrin, 650 F.3d 257, 267 (3d Cir. 2011). Relatedness is demonstrated when racketeering predicates "have the same or similar purposes, results, participants, victims or methods of commission, or otherwise are interrelated by distinguishing characteristics and not isolated events." Mega Concrete, Inc. v. Smith, CIV.A. 09-4234, 2013 WL 3716515, at *10 (E.D. Pa. July 15, 2013) (citing H.J., Inc., 492 U.S. at 239-240)). Continuity is "a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." H.J., Inc., 492 U.S. at 241. The RICO statute defines "racketeering activity" to include, *inter alia*, acts that are indictable under 18 U.S.C. § 201 (relating to bribery), 18 U.S.C. § 1341 (relating to mail fraud), 18 U.S.C. § 1343 (relating to wire fraud), 18 U.S.C. § 1503 (relating to obstruction of justice) and 18 U.S.C. § 1512 (relating to witness tampering). See 18 U.S.C. § 1961(1). "Where the allegations of the complaint, taken as true, do not support the existence of either long-term criminal conduct or the threat thereof, dismissal is appropriate." Shahin v. Darling, 606 F. Supp. 2d 525, 537 (D. Del. 2009) aff'd, 350 F. App'x 605 (3d Cir. 2009) (citing H.J. Inc., 492 U.S. at 242).

In her First Amended Complaint, Plaintiff alleges seven predicate acts. (First Am. Compl. ¶¶62(a)-62(g).) Plaintiff's alleged objection of justice predicate act under 18 U.S.C. §1503, see

25

id. ¶62(a), is based on Plaintiff's contention that CHSI and Penn allegedly acquired control over Chestnut Hill Hospital by making false representations to a judge in the Orphan's Court.  This alleged predicate act may be disregarded, because the reach of the obstruction of justice statute is limited to acts directed at any "officer in or of any court of the United States." 18 U.S.C. § 1503. Because a state court judge is not an officer of any court of the United States, the conduct alleged by Plaintiff, even if true, would not be indictable under 18 U.S.C. § 1503. As such, Plaintiff may not rely upon an alleged violation of 18 U.S.C. § 1503 as a predicate act to support her claim against CHSI and Penn under § l962(b).

Plaintiff's alleged witnesses tampering predicate act under 18 U.S.C. §1512 is based on Plaintiff's contention that CHSI and Penn "suborned perjury" from Tracy Stifnel and Terry Hess, two witnesses in the State Court Action. (First Am. Compl. ¶62(d).)  However, under 18 U.S.C. §1515:

> (1) the term "official proceeding" means--
>
>> (A) a proceeding before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a judge of the United States Tax Court, a special trial judge of the Tax Court, a judge of the United States Court of Federal Claims, or a Federal grand jury;
>> (B) a proceeding before the Congress;
>> (C) a proceeding before a Federal Government agency which is authorized by law; or
>> (D) a proceeding involving the business of insurance whose activities affect interstate commerce before any insurance regulatory official or agency or any agent or examiner appointed by such official or agency to examine the affairs of any person engaged in the business of insurance whose activities affect interstate commerce….

18 U.S.C. § 1515.  Because a medical malpractice action in state court is not an "official proceeding" within the meaning of §1515, the conduct alleged by Plaintiff, even if true, would

not be indictable under 18 U.S.C. § 1512. As such, Plaintiff may not rely upon an alleged

violation of 18 U.S.C. § 1512 as a predicate act to support her claim under § l962(b).

Plaintiff's alleged bribery predicate act under 18 U.S.C. §201 and 18 Pa. Cons. Stat. §

4701 is based on Plaintiff's contention that Post & Schell and JUA endeavored to influence

Judge Tereshko by making payments to Heather Tereshko. (First Am. Compl. ¶ 62(f); Pl.'s Resp.

Opp'n 45, 49.)  Judge Tereshko then allegedly sought to obtain jurisdiction over the State Court

Action for the purpose of undervaluing its disposition. (First Am. Compl. ¶62(f).)   Judge

Tereshko, however, is not a "public official" within the meaning of §201.  See 18 U.S.C. §

201(a)(1).  As such, Plaintiff may not rely upon the alleged bribery of Judge Tereshko to assert a

predicate act under 18 U.S.C. §201.  Similarly, the Court must also disregard Plaintiff's assertion

of a predicate act for bribery Pennsylvania's bribery statute, 42 Pa. C.S.A. § 4701. Under

Pennsylvania law, the elements of bribery are (1) the defendant offered, conferred or agreed to

confer a benefit upon another person, (2) the benefit was intended to be consideration for the

decision, opinion, recommendation, vote or other exercise of discretion of a public servant, and

(3) the defendant performed those acts knowingly or willfully. 42 Pa. C.S.A. § 4701; United

States v. Traitz, 871 F.2d 368, 384 n. 17 (3d Cir. 1989).  Plaintiff presents nothing, other than her

own unsupported allegations, that any payments Post & Schell made to Heather Tereshko were

for payment of anything other than her salary.

All that is left for Plaintiff to support her claim under § 1962(c) are Plaintiff's allegations

of conduct that allegedly violates the mail fraud statute (18 U.S.C. § 1341) and the wire fraud

statute (18 U.S.C. § 1343) (See First Am. Compl. ¶¶ 62(b), 62(c), 62(e), 62(g)).  To successfully

plead predicate acts of mail and wire fraud, a plaintiff must allege that the defendant used the

U.S. mail and interstate wires in furtherance of a scheme or artifice to defraud. <u>Kolar v. Preferred Real Estate Investments, Inc.</u>, CIV.A. 07-3864, 2008 WL 2552860, at *5 (E.D. Pa. June 19, 2008) <u>aff'd</u>, 361 F. App'x 354 (3d Cir. 2010) (citing <u>Kehr Packages, Inc. v. Fidelcor, Inc.</u>, 926 F.2d 1406, 1415-17 (3d Cir. 1991)).  Where a plaintiff relies on mail and wire fraud as a basis for a RICO violation, "the allegations of fraud must comply with Federal Rule of Civil Procedure 9(b), which requires that allegations of fraud be pled with specificity." <u>Lum</u>, 361 F.3d at 223 (internal citation omitted).  To plead a claim under §1962(c) with particularity, a plaintiff "must identify each separate predicate act, of which Plaintiff has knowledge, indicating the date, the particular person or entity who sent the facsimile in question, the recipient, and, most importantly, the way in which the particular transmission furthered the pattern of racketeering activity and the overall fraudulent scheme." <u>Tierney & Partners, Inc. v. Rockman</u>, 274 F. Supp. 2d 693, 689-99 (E.D. Pa. 2003).

The Court finds that Plaintiff has not sufficiently pleaded mail and wire fraud for several reasons.  First, Plaintiff's wire fraud allegations all concern her contention that certain medical records were altered and faxed by certain medical professionals. Plaintiff's mail fraud allegation again concerns her allegation that Donald Cahmi misrepresented material facts regarding the settlement terms.  With respect to this last allegation, Plaintiff does not specify how Mr. Cahmi used the mails to make these misrepresentations to her.  All of these allegations are conclusory in that they generally claim that the wires and mails were used, without identifying with the requisite degree of specificity how these alleged actions were part of a pattern or racketeering activity or how these alleged acts were related.  Second, and more importantly, it is clear that all of these alleged acts, even if true, are issues that are — and likely were — properly litigated in

the context of Plaintiff's medical malpractice action. As the Court has repeatedly stated, it is improper for Plaintiff to seek to relitigate her medical malpractice case be simply recasting it as a conspiracy action.

Additionally, the Court further finds Plaintiff fails to meet the "pattern" requirement of 18 U.S.C. § 1962, inasmuch as the First Amended Complaint fails to satisfy the continuity test requiring repeated conduct over a substantial closed-period of time or conduct constituting a threat of continuing criminal activity. Plaintiff attempts to lengthen the time frame of the alleged conspiracy by claiming that it began with the takeover of Chestnut Hill Hospital in early 2004.[14] (See Pl.'s Resp. Opp'n 46; see also Pl.'s Resp. Opp'n, Ex. J.) This unsupported assertion lacks plausibility. At most, any alleged conspiracy only took place during the sixteen days during which Judge Tereshko presided over the motions in limine and settlement discussions in the State Court Action. This is plainly insufficient. See Tabas v. Tabas, 47 F.3d 1280, 1293 (3d Cir. 1995) (predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy the continuity requirement) (citing H.J. Inc., 492 U.S. at 241); Hughes v. Consol-Pa., Coal Co., 945 F.2d 594, 610-11 (3d Cir. 1991) (predicate of acts of fraud and threats over twelve months not sufficient); Stoss v. Singer Fin. Corp., 2010 WL 678115, *7 (E.D. Pa. Feb. 24, 2010) (stating that the Third Circuit has held twelve months is not a substantial period of time for RICO purposes and rejecting RICO claims where plaintiff failed to alleged the defendant's scheme took place over substantial period of time).

---

[14] Indeed, it is for this reason that Plaintiff § 1962(c) claim is formally only asserted against the defendants allegedly involved in the takeover: CHSI, Chestnut Hill Healthcare Medical Associates, and Penn. However, the substance of the First Amended Complaint and Plaintiff's Response in Opposition assert allegations against a range of defendants.

b.  Section 1962(b) (Count III)

Count III asserts a claim against Defendants CHSI and Penn under 18 U.S.C. § 1962(b). Section 1962(b) makes it "unlawful for any person through a pattern of racketeering activity…to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."  18 U.S.C. 1962(b). To state a cause of action under this section, a plaintiff must allege: (1) defendant has an interest in an enterprise;  (2) defendant gained or maintained that interest through a pattern of racketeering; and (3) the enterprise affects interstate commerce. Lightning Lube, 4 F.3d at 1190. Moreover, a plaintiff "must show injury from the defendant's acquisition or control of an interest" of the enterprise via racketeering activities. (Id.)

The Court will dismiss Plaintiff's §1962(b) claim because Plaintiff does little more baldly restate the statutory elements of a claim under § 1962(b) and offers no facts to demonstrate how CHSI and Penn acquired or maintained their interest in Chestnut Hill Hospital (the alleged "enterprise") *through* a pattern of racketeering. (See First Am. Compl. ¶¶75-78.)  Additionally, "it is not enough for the plaintiff merely to show that a person engaged in racketeering has an otherwise legitimate interest in an enterprise."  Cottman Transmission Sys., LLC v. Kershner, 536 F. Supp. 2d 543, 560 (E.D. Pa. 2008).  These deficiencies, in addition to those previously noted in Section III.B.2.c, *supra*, are fatal to Plaintiff's claim under§ 1962(b).

c.  Section 1962(d) (Count IV)

Section 1962 makes it "unlawful for any person to conspire to violate" 18 U.S.C. §§ 1962(a)-(c).  18 U.S.C. § 1962(d).  "Any claim under section 1962(d) based on a conspiracy to violate [any of] the other subsections of section 1962 necessarily must fail if the substantive

30

claims are themselves deficient." <u>Lightning Lube, Inc.</u>, 4 F.3d at 1191 (citing <u>Leonard v.</u> <u>Shearson Lehman/Am. Express, Inc.</u>, 687 F.Supp. 177, 182 (3d Cir.1988)); <u>Kolar</u>, 361 F. App'x at 366 n.13 ("If the substantive RICO claims fail on the merits, as they do here, <u>Lightning Lube</u> controls.").  Because Plaintiff's substantive RICO claims are both deficient, dismissal of her claim under § 1962(d) is appropriate.

        In addition, even if Plaintiff could establish standing to assert a cause of action under RICO, Plaintiff's claim under § l962(d) is barred by the statute of limitations.  RICO does not provide an express statute of limitations for actions brought under its civil enforcement provision.  However, the Supreme Court has concluded that a civil action under RICO is subject to a four-year limitations period. <u>Agency Holding Corp. v. Malley-Duff and Assocs., Inc.</u>, 483 U.S. 143, 146, 107 S.Ct. 2759, 2762 (1987); <u>see</u> <u>also</u> <u>Prudential Ins. Co. of Am, v. U.S. Gypsum</u> <u>Co.</u>, 359 F.3d 226, 232-33 (3d Cir.2004).  The limitations period begins to run when a plaintiff discovers, or should have discovered, her injury. <u>Forbes v. Eagleson</u>, 228 F.3d 471, 484 (3d Cir. 2000); <u>see</u> <u>also</u> <u>Mundy v. City of Philadelphia</u>, Civ. A. No. 00-1627, 2000 WL 1912727, at *2 (ED. Pa. Dec. 22, 2000) ("Federal RICO claims are subject to a four-year statute of limitations period that begins to run when a plaintiff discovers (or should have discovered) her injury.").
As with her state law civil conspiracy claim, Plaintiffs purported cause of action under § l962(d) arises out of her contention that the Defendants engaged in a conspiracy to devalue her medical malpractice claim through the commission of a number of illegal acts in the State Court Action. Also like her claim for civil conspiracy, the statute of limitations bars Plaintiffs claim under § 1962(d). Based upon the allegations in the amended complaint Plaintiff cannot reasonably dispute that she knew, or should have known, of her alleged injury when she received an offer of

settlement that, according to her, did not reflect the "full value" of her medical malpractice claim. At the latest, Plaintiff knew, or should have known, of her alleged injury when Judge Tereshko issued the January 23, 2009 Order stating that the parties had settled the case and directing the Prothonotary to remove the case from the active list if. Thus, Plaintiff was injured, or should have known of her injury, no later than January 23, 2009, and her RICO claim accrued on that date. In order to be timely, Plaintiff would have had to file her RICO claim against the Defendants by late January 2013.  She did not.

**C.      Amendment of the Complaint**

Because the Court will dismiss Plaintiff's First Amended Complaint in its entirety, the question remains as to whether the Court will allow Plaintiff to file a second amended complaint. Amendments prior to trial are governed by Federal Rule of Civil Procedure 15.  Rule 15 direct courts grant a party leave to amend their complaint "when justice so requires." Fed.R.Civ.P. 15(a)(2).  "When a plaintiff does *not* seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that he has leave to amend within a set period of time, unless amendment would be inequitable or futile."  Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) (citing Shane v. Fauver, 213 F.3d 113, 116 (3d Cir. 2000)) (emphasis in the original).  "Futility means that the complaint, as amended, would fail to state a claim upon which relief could be granted. In determining whether a claim would be futile, the district court applies the same standard of legal sufficiency as applies under Federal Rule of Civil Procedure 12(b)(6)."  Travelers Indem. Co. v. Dammann & Co., Inc., 594 F.3d 238, 243 (3d Cir. 2010) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir.1997)).

The Court will dismiss Plaintiff's Pennsylvania civil conspiracy claim with prejudice for at least four reasons: (1) Plaintiff's underlying claim of fraud is barred by the applicable two year statute of limitations; (2) Plaintiff is not entitled to the equitable remedy of statutory tolling because Plaintiff did not exercise due diligence in bringing this action; (3) to the extent Plaintiff seeks to assert a claim for fraud in the inducement in entering the settlement agreement, this Court is not the proper forum for Plaintiff to bring such a claim; and (4) Plaintiff has not, and cannot, allege that Defendants' sole motivation was to cause her harm.  No amendment will cure these deficiencies.  The Court will also dismiss Plaintiff's RICO claims with prejudice for at least three reasons: (1) her lack of standing; (2) the extensive deficiencies noted in all of her substantive RICO claims; and (3) the fact that Plaintiff's RICO claim is barred by the applicable four year statute of limitations. No amendment will cure these deficiencies.  As the Third Circuit has recognized, "the concern expressed in Twombly is just as applicable to a RICO case, which resembles an antitrust case in point of complexity and the availability of punitive damages and of attorneys' fees to the successful plaintiff.  RICO cases, like antitrust cases, are 'big' cases and the defendant should not be put to the expense of big-case discovery on the basis of a threadbare claim."  In re Ins. Brokerage Antitrust Litig., 618 F.3d at 370 (quoting Limestone Dev. Corp. v. Vill. of Lemont, 520 F.3d 797, 803 (7th Cir.2008)).  Accordingly, Plaintiff's request for leave to amend will be denied.

## V.    CONCLUSION

For the reasons more fully set forth above, the First Amended Complaint is dismissed in its entirety.

An appropriate order follows.